William T. Cowin, J.
In this action for a declaratory judgment against the State of New York and other defendants, plaintiff seeks an adjudication that it is the rightful owner and entitled to possession of the skeleton of a mastodon now in the State Museum at Albany. Defendants move for summary judgment asserting among other things that the court has no jurisdiction.
Plaintiff was the owner of a parcel of real property in the town of Montgomery, Orange County, in the State of New York. *568 In connection with proposed construction of Interstate Route 503, the State of New York, on July 5, 1967, filed a map in the office of the Secretary of State. There is some difference between the parties as to whether the filing was made pursuant to section 29 or section 30 of the Highway Law. However, for our purposes, the pertinent provisions of both sections are substantially the same. Subdivision 5 of each section provides that upon such filing the State ‘ ‘ may immediately enter upon and take possession of the property so described” for the purposes of the planned highway. In the course of excavation in a peat bog approximately 12 feet down, on April 23, 1968, a complete skeleton of a mastodon alleged to be approximately 10,000 years old was discovered. Although souvenir hunters removed some of the bones, State and private archeologists who were called in succeeded in uncovering and removing approximately 90% of the skeleton. The remains of the mastodon are now in the State Museum in Albany where they have been treated with chemical preservatives.
The Encyclopedia Britannica (vol. 14, p. 1049, 49th ed., 1966) defines ‘ ‘ mastodon ’ ’ as the ‘ ‘ common and generic name (synonymous with ‘ Mammut ’) of extinct elephantlike proboscideans ” and states that the ‘ ‘ best-known example from North America is Mastodon americanus, a large, two-tusked mastodon of the Pleistocene epoch.”
The Encyclopedia Americana (1969 ed., vol. 18, p. 419-420) states that Mastodon americanus was a large bulky proboscidean; their skeletons are as much as 9 or 10 feet in height at the shoulder, and that a mastodon of this height would have been much heavier than a modern elephant. The Encyclopedia Americana states, “ Probably the most complete and famous mastodon skeleton to be discovered is the so-called Warren Mastodon, unearthed a century ago in a swamp near Newburgh, New York [not too far from the discovery of the present bones]. This skeleton was first exhibited in many towns and cities of eastern North America, but in time it came to rest in the private museum of Dr. John C. Warren of Boston. In 1909, it was purchased by The American Museum of Natural History, New York City, through the munificence of Mr. J. P. Morgan, and it is now exhibited in that institution. ’ ’
I have no information as to whether there has been any similar find in the past century until this present one. Assuming there has been none, as defendants state, this latest discovery is of “extraordinary significance” and its scientific value beyond estimation. Assuming the correctness of the estimate of the State Paleontologist that the skeleton is approxi *569 mately 10,000 years old, then, when Abraham left Ur of the Chaldees, this skeleton had already been buried for 60 centuries. The defendants urge that this find is one of ‘1 transcendent importance and preservation of this skeleton under scientific conditions and for the benefit of scholars as well as the general public is essential.” (Affidavit by Donald W. Fischer, State Paleontologist, p. 4.)
This action, brought for a declaratory judgment by plaintiff, asks that the court adjudge it is the owner of the bones and that the defendants be directed to turn them over to it. Claims for money damages against the State are relegated by law to the Court of Claims (Court of Claims Act, §§ 8, 9. See Psaty v. Duryea, 306 N. Y. 413, 416; Adler, Ind. v. Noyes, 285 N. Y. 34). Plaintiff insists that it seeks no money damages and will be satisfied only with the delivery of the mastodon bones and that this court has jurisdiction and not the Court of Claims.
Waivers of sovereign immunity must be strictly construed (Wolf v. State of New York, 219 App. Div. 584, affd. 247 N. Y. 542, Smith v. State of New York, 227 N. Y. 405, 410). The State of New York has given its permission by legislative enactment to be sued in specific situations in the manner provided by statute and this court is bound by this legislative permission. There does exist express legislative sanction for this court to entertain actions and proceedings against the State involving conflicting claims to real property, partition and foreclosure. Proceedings in the nature of certiorari, mandamus or prohibition affecting a State agency may also be brought in this court pursuant to CPLR article 78.
There is also some authority permitting an action for a declaratory judgment against the State in the Supreme Court under CPLR 3001 and 3017 (subd. [b]). (3 Weinstein-Korn-Miller, N. Y. Civ. Prac., par. 3001.21; Town of Ohio v. People, 264 App. Div. 220). While the use of a declaratory judgment can be justified in many situations though an alternative remedy exists (3 Weinstein-Korn-Miller, op. cit., par. 3001.10; Borchard, Declaratory Judgments [2d ed.], p. 315 el seq.; James v. Alderton Dock Yards, 256 N. Y. 298; Woollard v. Schaffer Stores Co., 272 N. Y. 304) nevertheless the rule is qualified by the general principle that where there is no necessity for such a declaratory judgment and it would serve no useful purpose or where there is a full and adequate remedy available through an established form of action, the remedy should not be used (24 Carmody-Wait 2d, New York Practice, § 147:6). An example of the latter would be an action for replevin or conversion instead of a suit to establish a lien on chattels (Brownell *570 v. Board of Educ., 239 N. Y. 369; cf. Goldberg & Sons v. Gilet Bldg. Corp., 135 Misc. 158).
It appears from all the facts before me that replevin is decidedly more suited to plaintiff’s claim than a declaratory judgment. Using Goldberg & Sons v. Gilet Bldg. Corp. (supra) as authority, Carmody-Wait 2d (vol. 12, § 82.8, p. 558) states: ‘ ‘ Replevin is a more precise and complete remedy for unlawful detention than a declaratory judgment, for when final judgment is entered on the former, all rights between the parties will have been determined, but such result may not necessarily obtain where a declaratory judgment is sought.”
The defendants feel that this action is for all procedural purposes better suited as an action in replevin, and I am inclined to agree. Plaintiff objects that such a holding would put it out of court because there is no precedent which would permit an action in replevin against the State in this court. Plaintiff further asserts that the Court of Claims has no jurisdiction of such an action but cites no authority other than a reference to section 9 of the Court of Claims Act.
The sole precedent which has been disclosed to this court is Conklin v. Palisades Interstate Park Comm. (282 App. Div. 728), which involved an action for replevin and damages. In that case the Appellate Division of this Department reversed a judgment of the County Court, Rockland County, in favor of the plaintiff and held that no court except the Court of Claims had jurisdiction of a claim of this nature. There is no clear . pronouncement that the crucial jurisdictional distinction in that case was the addition of a claim for damages to that of replevin. But for the sake of the argument at this point, the important consideration still remains the same — that there is no known basis or precedent for retention of jurisdiction in this court of an action in replevin against the State. However, in reviewing the record in Conklin, I find that the Park Commission’s counsel actually conceded the jurisdiction of the County Court as to the replevin claim (Appellant Park’s Brief, p. 4) and argued only the right of the court to award money damages against a State agency. Yet our Appellate Division reversed the entire judgment with the statement that the Park Commission, as an agency of the State, is “ not subject to a claim of this nature in any court of the State save the Court of Claims.”
Despite the fact that a replevin action is better suited to the plaintiff’s claim, this court would still entertain the action for a declaratory judgment but for the fact that the right of the Supreme Court to accept such an action against the State has been qualified in every important precedent on the question by *571 the caveat that the action must not involve a proprietary right of the State. The principle is well stated in Carmody-Wait 2d (vol. 24, § 147:29) at pages 450-451: “ The rule to be applied has been summarized in this way: where a proprietary right of the state is involved and the jurisdictional question is raised, the courts have been consistent in sustaining the immunity of the state; but where no proprietary right is involved, the Supreme Court has asserted its right to pass upon the final questions involved.” (See, also, Town of Ohio v. People, 264 App. Div. 220, supra; General Mut. Ins. Co. v. Coyle, 207 Misc. 362.) I should add here also that this same limiting factor governing declaratory judgments, a “ proprietary” interest, is undoubtedly the basis for the Conklin holding that an action for replevin and damages could not be maintained in the County Court. “Proprietary” is defined as “in the capacity of an owner ” (Ballentine’s Law Dictionary, 3d ed.), “ characteristic of or appropriate to an owner ” (Webster’s Int. Dictionary, 3d ed., p. 1819), “ Belonging to ownership; as proprietary rights ” (Bouvier’s Law Dictionary). Plainly, the State of New York has here asserted a paramount right to ownership and possession of the skeleton, hence a “ proprietary ” right which brings the claim squarely within the rule and therefore bars jurisdiction in this court.
Although the parties have not raised the point, there remains for consideration the question whether by a general appearance and answer here, the defendants have not waived objection to jurisdiction by this court. I feel, however, that this question was resolved in Conklin v. Palisades Interstate Park Comm. (supra). That case rests on the assumption that with respect to such a claim, the State (and any agency of the State) is not subject to the jurisdiction of any court in this State except the Court of Claims. The court there stated: ‘ ‘ There is no statutory authority which permits an agency of the State or an official to waive such condition. ” (See, also, Kiersted v. People, 1 Abb. Prac. 385; Metropolitan Trust Co. v. State Bd., 220 N. Y. 344, revg. 172 App. Div. 653; Smith v. State of New York, supra).
The plaintiff is entitled to complain that if the Court of Claims has no jurisdiction as plaintiff contends, and this court does not assume jurisdiction, it may be left without a remedy. However, that is a matter within the control of our Legislature, not the courts. ‘ ‘ The fact that no other forum may be open to claimant is not a legal reason for declaring jurisdiction in this court ” (Maloney v. State of New York, 207 Misc. 894,900, affd. 2 A D 2d 195; see, also, Mathewson v. New York State Thruway Auth., 11 A D 2d 782; Psaty v. Duryea, 306 N. Y. 413, supra.)
*572 Although two individuals are named as codefendants here together with the State of New York and the New York State Museum, the reasoning underlying the disposition in Pauchogue Land Corp. v. Long Is. State Park Comm. (215 App. Div. 816, mod. 243 N. Y. 15) cannot be applied. It must be remembered that plaintiff here is not asking for damages for the taking or detention of the skeleton — it only asks for a declaration that it have possession and title. Since possession is now with the State Museum in Albany, a judgment against the individuals whether declaratory of the rights of the parties or in replevin, serves no purpose, because the individuals do not have possession and do not in their individual capacity assert or claim any title to the mastodon.
The complaint is dismissed, without prejudice to such other action, claim or proceeding as may be legally available to plaintiff.